STATE OF MAINE
*vs.*
OWEN LADD

Kennebec.   Opinion, October 1, 1963.

*Jon Lund,* County Atty. and *Foahd Saliem,* Assistant County Atty., for State.

*Lewis Levine* and *Martin Brody,* for   defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

TAPLEY, J.  On appeal.  The respondent, Owen Ladd, was indicted by separate indictments for carnal knowledge and sodomy at the February Term, 1963, at Augusta, for

the County of Kennebec. By agreement, the cases were tried together. After a verdict of guilty in each case, and before judgment, the respondent filed motions before the presiding Justice moving that new trials be granted. The motions were denied, whereupon the respondent seasonably appealed the rulings of denial to the Law Court.

The only question raised by appeal from the denial of a motion for a new trial in a criminal case is whether, in view of all the testimony, the jury was justified in believing beyond a reasonable doubt that the respondent was guilty. *State* vs. *McKrackern,* 141 Me. 194.

The prosecutrix was a young girl of the age of 15 years when the alleged crimes were committed. She was living at the home of the respondent and his wife, engaged in assisting in the care of a young grandson. The respondent was 50 years of age. The indictments alleged the offenses to have been committed in June and July of the year 1962. During the alleged commission of the crimes the wife of the respondent was in Massachusetts for various and extended periods of time. The only testimony presented by the State was that of the prosecutrix insofar as those acts were concerned which, if believed by the jury, would constitute the commission of the crimes alleged.

In a case of this nature, where the prosecution must depend largely upon the testimony of the prosecutrix, corroboration is often difficult to obtain. When lacking to any appreciable degree, the testimony must be scrutinized and analyzed with great care. If the testimony is contradicting to a convincing degree, unreasonable or incredible, it does not provide sufficient support for a verdict of guilty. *State* vs. *Wheeler,* 150 Me. 332; *State* vs. *Robinson,* 153 Me. 376; *State* vs. *Field,* 157 Me. 71.

Counsel for the respondent argues (1) that the girl's testimony is incredible and not to be believed because the

respondent's physical condition was such that the acts of carnal knowledge and sodomy could not possibly have taken place, particularly as often as the prosecutrix said they did; (2) that her testimony was inconsistent as to dates of the occurrences; and further, that she exhibited much confusion in some portions of her testimony.

The respondent took the stand and offered denial of the accusations. He stressed his physical condition and age as reasons why he was incapable of intercourse which he contends proves the girl's story as untrue and, in addition, gives support to his defense of denial. Mrs. Ladd, wife of the respondent, witnessed, among other things, that her husband was incapable of sexual intercourse. Dr. Craig Morris, a specialist in internal medicine, was called in rebuttal by the State. Dr. Morris testified that the respondent, Mr. Ladd, was his patient whom he saw intermittently over a period of 2½ to 3 years. The last time he saw him professionally was in January of 1963. At the January visit the doctor was asked by Mr. Ladd, in substance, if he could prove that he, Mr. Ladd, was incapable of sexual intercourse. The doctor testified:

"A. He asked me if I could prove that he would be incapable of sexual intercourse. And I told him that I could not prove it, and I felt that there was no other physician that could prove such a thing.

Q. Now, Dr., I would ask your medical opinion: whether or not it is possible for a person to be impotent with respect to one sexual partner but not impotent with respect to another?

A. That is absolutely possible."

The grounds of appeal are based substantially on the premise that because of the respondent's physical condition the prosecutrix' story is incredible and not to be believed. In order that this hypothesis prevail it would be necessary

for the jury to accept the respondent's testimony as to his physical condition to be the truth. This, apparently, the jury did not do.

In the case of *State* vs. *Lambert*, 97 Me. 51 this Court had occasion to concern itself with the functions of a jury in a criminal case when a question of jury error is reviewed by the appellate court. Justice Savage, in speaking for the court, wrote, on page 52:

> "We may say at the outset that in considering the weight of this testimony, depending as it does for its effect upon the credibility of the witnesses, we cannot put ourselves in the place of the jury, nor usurp that province of deciding questions of fact which the law imposed upon them. Their conclusions, if warranted by the evidence, are to stand. We have before us only the pages of a printed record, aided somewhat by an inspection of the exhibits which were introduced in evidence at the trial. The jury had before them the living, speaking witnesses. The degree of credence properly to be given to the story of a witness may depend much upon his appearance upon the stand, upon his air of candor and truthfulness, upon his seeming intelligence and honesty, upon his apparent want of bias or interest or prejudice. The want of such characteristics may render testimony of little value. And the appearance of such characteristics, or the want of them, is not always transcribed upon the record of a case. If the story of a witness is seemingly credible and probable, and not inconsistent with other admitted or proven facts, the listener has much better opportunity to judge correctly of its truthfulness than a reader has. From the bare record we might be in grave doubt as to which of two conflicting statements is true. The jury, seeing the witnesses, might have no reasonable doubt. And it follows that in cases like the one under consideration, as in all others, the jury must be the final arbiters of questions of fact, when the evidence in support of their con-

> clusions, considered in connection with all the other evidence, is of such a character, such a quality and such weight, as to warrant them in believing it. We shall endeavor to apply these principles in our consideration of this case."

The record demonstrates the fact that the veracity of the complaining witness was under attack; that there appeared no *disinterested* witness to testify that the acts described by the girl could not, for physical reasons, be performed by the respondent. These matters, as well as the question involving the girl's testimony as to times and dates of the alleged acts, were all questions for a jury to answer by its verdict.

It is the province of the jury to resolve conflicting testimony and to determine where the truth lay. *State* vs. *Brown,* 142 Me. 106.

We have read with much care the printed record and are of the opinion that there is sufficient evidence upon which the jury could properly find a verdict of guilty in each case.

The presiding Justice's denial of the motions for new trials was not in error.

*Appeals denied.*

*Judgment for the State in each case.*