STATE of Maine

v.

**Gerald P. FLAHERTY.**

Supreme Judicial Court of Maine.

Dec. 6, 1978.

Joseph H. Field, Asst. Dist. Atty. (orally), Bath, for plaintiff.

Thomas A. Berry (orally), Boothbay Harbor, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, DELAHANTY, GODFREY and NICHOLS, JJ.

NICHOLS, Justice.

The Defendant, Gerald P. Flaherty, appeals from a judgment of conviction of robbery, 17–A M.R.S.A. § 651, entered upon a jury verdict in Superior Court in Sagadahoc

County. At trial the State's case relied upon strong circumstantial evidence plus the testimony of the victim. Upon appeal the Defendant vigorously asserts that this evidence was insufficient to support the verdict and that, therefore, his timely motion for acquittal should have been granted. He also claims it to have been error for the presiding justice to exclude certain evidence relating to the victim's participation in an alcoholic rehabilitation program, which evidence the Defendant sought to introduce for the purpose of impeaching the victim's ability to perceive and recall the circumstances of the robbery.

We deny the appeal.

The jury was entitled to believe the following facts based upon the evidence presented at trial: On June 30, 1977, Francis G. O'Neil went to a restaurant in Bath with ninety dollars in his wallet. Later, at 9:30 P. M., he went to the Elliot House, another Bath restaurant. There he joined a group which included the Defendant and the Defendant's friend, John Papa. The Defendant suggested that he, Papa and O'Neil go out for a drive. The three left in a car belonging to the Defendant's girlfriend. Soon they stopped at a local market to purchase a case of beer. O'Neil, while seated in the car at the market, took his wallet out of his pocket and contributed several dollars toward that purchase. They then parked in a salt shed near the river. There they drank the beer, throwing the bottles out of the car window. As they drank, the Defendant was in the driver's seat; O'Neil was in the passenger's seat; and Papa was in the rear seat. By this time it was about midnight. Since 5:00 P.M. O'Neil had imbibed approximately eight bottles of beer and a mixed drink. He was now drunk.

Soon O'Neil started to get out of the car. Someone hit him on the head and shoved him out of the car. The blow rendered him unconscious or only partially conscious. The car sped away.

O'Neil staggered out of the salt shed and toward town. He was picked up by a policeman and taken to the Bath hospital about 12:15 A. M. While being treated at the hospital, he discovered his wallet was missing. Meanwhile, Flaherty and Papa returned to the Elliot House one-half hour after they had left that restaurant.

A police investigation verified certain facts stated by O'Neil. Tire marks, beer bottles, blood stains and his lost shoe were found at the salt shed near the river. The car driven that night showed a discoloration on the seat cover at head level on the passenger's seat.

The Defendant was not contacted by the police until the following evening. When first approached concerning the incident he responded, "Yes, you can [question me], but I don't beat on squids [sailors, in local parlance]." After proper *Miranda* warnings, the Defendant related several inconsistent stories concerning the events but acknowledged that he had given a drunken sailor a ride on the previous evening.

■ In reviewing the sufficiency of the evidence to support a verdict, we recognize that the jury has the responsibility to determine the credibility of the witnesses and the weight to be given their testimony. *See State v. Lewisohn*, Me., 379 A.2d 1192, 1210 (1977). We must determine whether there was credible evidence from which the jury would be justified in believing beyond a reasonable doubt that the defendant was guilty. *See State v. Gove*, Me., 379 A.2d 152, 153 (1977); *State v. McFarland*, Me., 369 A.2d 227, 229–30 (1977).

■ Proof beyond a reasonable doubt may rest upon the testimony of a single witness. *State v. Blier*, Me., 371 A.2d 1091, 1093 (1977). The testimony of a robbery victim, if it is credible, is sufficient of itself to warrant a conviction and no corroborative evidence is required. *State v. Carver*, Me., 330 A.2d 785, 787 (1975); *State v. Trask*, Me., 223 A.2d 823, 825 (1966).

■ We conclude that in the case before us there was sufficient evidence, when taken together with all reasonable inferences to be drawn therefrom, to support a finding that the Defendant was a participant in a

robbery of O'Neil. *See State v. Carter*, Me., 391 A.2d 344 (1978).

There was credible evidence from which the jury would have been justified in concluding that either the Defendant or Papa inflicted a blow to O'Neil's head and pushed him out of the car. The jury would be further justified in concluding that the Defendant was at least an accomplice, in that he aided in the commission of the robbery. The friendship of the Defendant and Papa, plus the rapid departure of the vehicle and the Defendant's suggestion of the outing, taken with the Defendant's comment to the police officer, indicate some direct participation in the crime.[1] *See State v. Berube*, 158 Me. 433, 185 A.2d 900 (1962).

It is the absence of the wallet, never recovered, which is most troubling, because it was the State's burden to prove its theft. We determine, nevertheless, that the jury was justified in concluding beyond a reasonable doubt that it was taken from the victim by the occupants of the car.

O'Neil had the wallet immediately before going to the salt shed when the Defendant stopped to purchase beer. The wallet was not taken out of the car at that time. O'Neil became aware that his wallet was missing shortly after he had been struck on the head by one of his companions. From the facts thus legally proved the jury could infer that the wallet was missing because the Defendant and Papa had removed it from O'Neil's person and had subsequently disposed of it. *See State v. Ouellette*, Me., 358 A.2d 538, 541 (1976); *State v. Trask*, Me., 223 A.2d 823 (1966); *People v. Hubler*, 102 Cal.App.2d 689, 228 P.2d 37 (1951); 67 Am.Jur.2d Robbery § 59, p. 63 (1973); 77 C.J.S. Robbery § 47, p. 495 (1952).

The Defendant also asserts that the court erred in refusing to admit certain testimony relating to O'Neil's habits of intoxication and their medical treatment. O'Neil's credibility was a crucial issue. The Defendant properly questioned O'Neil concerning the quantity of alcohol he had consumed that night. Evidence of O'Neil's involvement in an alcoholic rehabilitation program was excluded, however.

Defendant's offer of proof failed to show this evidence to be a foundation for expert testimony on the long-term effects of alcoholism. Absent such expert commentary, the foundation evidence is of weak probative force. There was no abuse of discretion in the presiding justice's exclusion of evidence of involvement in the rehabilitation program. *See* M.R.Evid. 403 and 611(a); R. Field & P. Murray, *Maine Evidence* § 611.1, p. 153 (1976); *see also Commonwealth v. Caine*, 366 Mass. 366, 318 N.E.2d 901, 905 (1974).

The Defendant's two final points are likewise without merit.

After retiring, the jury submitted questions to the presiding justice concerning the role of intent in determining the criminality of conduct. He responded with a proper instruction on intent and he elaborated by discussing the theory of attempt. The Defendant contends these instructions were slanted toward the State. There was no error in the instructions as given. The presiding justice's discussion of attempt may have been superfluous but it was not prejudicial.

After reviewing the record we are convinced that the Defendant received a fair trial. The presiding justice had considerable latitude in regulating the scope and manner of direct and cross-examination. M.R.Evid. 611. He did not exceed the bounds of that discretion in this case.

The entry is:

Appeal denied.

Judgment affirmed.

ARCHIBALD, J., did not sit.

---

1. Mere presence plus flight may be insufficient to prove participation beyond a reasonable doubt. *See* W. La Fave & A. Scott, *Criminal Law* § 64, p. 503 (1972). Here, however, the circumstances negate the innocence of the flight.